IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CV-17-FL

| | |
|---|---|
| DELORIS HARGROVE WHITEHEAD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Claimant Deloris Hargrove Whitehead ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 2 June 2006, alleging disability beginning 1 May 2004. (R. 116-25). Both claims were denied initially and upon reconsideration. (R. 52-61, 64-72). A hearing before the Administrative Law Judge ("ALJ") was held on 4 February 2009, at which Claimant was represented by counsel and a witness, a

medical expert ("ME") and a vocational expert ("VE") appeared and testified. (R. 19-47). On 27 March 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 5-17). On 30 December 2009, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper credibility assessment and (2) finding Claimant retained the residual functional capacity ("RFC") to perform past relevant work ("PRW") as a small product assembler and a cleaner. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 3. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 10). Next, the ALJ determined Claimant had the following severe impairments: bilateral knee pain - degenerative joint disease, pain in the left and right shoulders, left hip and both hands, hypertension and gastroesophageal reflux disease. *Id.* However,

3

at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 11). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work.[1] *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 15). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a small product assembler and a cleaner. (R. 16).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 56 years old and unemployed. (R. 22). Claimant is a high school graduate. (R. 26). Claimant was last employed with a day care center, where her duties included preparing meals and assisting in the classroom. (R. 26-27). Claimant's past work experience also includes stacking foam on pallets, assembly line work and cleaning/housekeeping. (R. 29, 31-32).

Claimant alleged that her impairments include right hand pain, numbness and tingling, left shoulder pain when she raises her arm above her head or reaches her arm out, acid reflux, chest pain, depression, vertigo and headaches. (R. 22-23, 35-37). Claimant testified that numbness and pain in her right wrist disrupts her sleep approximately two nights per week. (R. 23). Claimant

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

experiences chest pain two to three times per week. (R. 35). Claimant explained she has not been treated for depression as she cannot afford the medical care. (R. 35). Claimant experiences dizziness up to two times per month and headaches on a frequent basis. (R. 37). Claimant testified also that her vision is a "little off" but explained any problem is fixed with corrective lenses. (R. 25). Claimant's pain medication consists mostly of Tylenol, which she takes twice a day. (R. 40). Claimant lies down about an hour day, generally after taking medication which "makes [her] sluggish." (R. 39). Claimant subsequently testified to experiencing no medication side effects. (R. 40).

Claimant testified that she can stand from 15 to 30 minutes and walk a block. (R. 38). Due to knee pain, Claimant must hold onto the rail when ascending stairs (R. 38). On a typical day, Claimant can perform activities around her home for an hour or two without having to take any pain medication. (R. 23, 40). Claimant does not perform any yard work or have any hobbies and her social activities are limited to attending church and spending time with her children. (R. 39, 40). Claimant is able to care for her personal needs. (R. 40). Claimant drives approximately 15-20 miles per week. (R. 25).

## II. Testimony of Undrea Pettaway at the Administrative Hearing

Undrea Pettaway ("Pettaway"), Claimant's daughter, also testified at the administrative hearing. (R. 40-43). Pettaway testified to seeing Claimant on a weekly basis and stated further that Claimant resides with Pettaway one week out of every month. (R. 41). Pettaway explained that Claimant has difficulty climbing stairs, experiences hand, knee and chest pain and takes Tylenol for pain relief. (R. 41). Pettaway testified further that Claimant has more bad days than good days. (R. 41). Pettaway described Claimant as withdrawn and depressed. (R. 42).

### III. Medical Expert's Testimony at the Administrative Hearing

Helen Cannon, M.D., testified as a ME at the administrative hearing. (R. 43-46). Dr. Cannon testified that Claimant has diagnoses of degenerative joint disease, left shoulder and hip pain, impingement syndrome in her right shoulder, hypertension, gastroesophageal reflux disease and vertigo. (R. 44). Dr. Cannon explained Claimant's reflux disease is thought to be the etiology of Claimant's chest pain complaints and that vertigo is secondary to fluid in Claimant's ear. (R. 44). Dr. Cannon noted that Claimant had undergone arthroscopic surgery on her left knee in 2003 and left and right trigger thumb release in 2002 and 2004, respectively. (R. 44). Dr. Cannon explained the record contained no information about depression. Dr. Cannon testified that as a result of Claimant's impairments, Claimant could perform at least sedentary work and simple, routine and repetitive tasks, but no continuous movement above her shoulders. (R. 46).

### IV. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 46-47). The VE testified only as to Claimant's light work history as a small products assembler (DOT #706.684-011) and cleaner/housekeeping (DOT #323.687-010). The ALJ did not ask any further questions of the VE and Claimant's counsel did not cross-examine the VE.

### DISCUSSION

### I. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 9-11. This court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the

intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 SSR LEXIS 4, at *1, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

1. effect of symptoms on claimant's daily activities
2. location, duration, frequency and intensity of the symptom(s)
3. factors that precipitate or aggravate claimant's symptoms
4. type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
5. non-medical treatment received for relief of the symptom(s)
6. any non-treatment measures used to relieve the symptom(s)
7. other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *8, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended*

7

*in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ properly summarized Claimant's medical records. With respect to Claimant's knee impairment, the ALJ discussed reports by Greig McAvoy, M.D., citing the following: (1) 13 October 2003 notation that Claimant's right knee problems had resolved with conservative measures (R. 182); (2) 23 October 2003 notation insisting Claimant return to work (R. 183); (3) 11 December 2003 report indicating Claimant was provided a note stating she could return to "regular duty work without restrictions" following arthroscopic surgery beginning 5 January 2004 (R. 185); and (4) 6 January 2004 note wherein Dr. McAvoy advised that he had left a voicemail with Claimant stating she "would do no harm by returning to her normal activities" and offered to provide Claimant anti-inflammatory medication to control her symptoms (R. 186). (R. 12-13). The ALJ summarized also notes from Rocky Mount Family Medical Center documenting Claimant's complaints of chest tightness, leg pain, acid reflux and shortness of breath (R. 13-14, 223, 225-26, 237-38). These records indicate medication non-compliance (R. 223, 225), rejection of an orthopaedic referral for knee and shoulder pain (R. 224), complaints of dizziness and headaches after rising from a seated position, complaints of pain in the right wrist when Claimant attempted to pick something up or put weight on it, failure to keep medical appointments (R. 237) and a mental status examination wherein Claimant was described as alert and oriented (R. 238). (R. 13-14). The ALJ discussed also treatment records from Robert Martin, D.O., and Stephen Mould, PA-C, with Carolina Regional

Orthopaedics concerning Claimant's left shoulder impingement syndrome and right wrist and hand pain (R. 14, 254-55, 257). These records indicate Claimant's left shoulder impingement syndrome had improved with the use of Relafen (R. 254), Claimant's right wrist and hand pain were doing "reasonably well" and that Claimant had a good range of motion of shoulders, elbows, wrist and hands (R. 255). (R. 14).

The ALJ discussed also the findings of Satish Kumar, M.D., a state agency examining consultant, and the testimony of Dr. Cannon, the ME. Dr. Kumar noted upon examination that Claimant could stand 30 to 45 minutes and to lift 10 to 15 pounds. (R. 15, 210). Dr. Kumar noted also that Claimant had no restricted movements of any of her joints, experienced mild stiffness in her left hip joint and did not require the use of a cane or a walker to ambulate. (R. 15, 211, 213). Dr. Cannon opined that Claimant was capable of at least sedentary work and simple, routine and repetitive tasks but no continuous movement above the shoulders if performing sedentary work. (R. 15, 46). Upon review of the record, the court finds the ALJ's medical summaries adequate and accurate.

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 SSR LEXIS 4, at*18, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's testimony that she can drive, care for her personal needs and clean and vacuum for an hour or two without taking any pain medication; (2) Claimant's

testimony regarding pain in her knees, hands, left shoulder and chest and being awakened approximately two nights a week with hand pain; (3) aggravation of Claimant's shoulder pain when she reaches above her head or straight out with her left arm; (4) Claimant's reliance primarily on Tylenol and Ibuprofen for pain; and (5) Claimant's testimony that she can stand 15 to 30 minutes and walk a block. (R. 12, 15).

After considering the above evidence, the ALJ noted Claimant's allegations of pain were inconsistent with the medical opinions of record. As the ALJ discussed, Dr. Kumar noted that Claimant had no restricted movements of any of her joints, Dr. McAvoy noted that Claimant was doing well following left knee arthroscopy and could return to regular duty work without restrictions as well as her normal activities and Dr. Martin noted that Claimant's left shoulder movement improved with medication. The ALJ observed that Claimant's treatment regimen indicated her pain was not as intractable as alleged. (R. 16). The ALJ pointed out that despite Claimant's pain allegations, Claimant relied primarily on Tylenol and Ibuprofen. (R. 15). The ALJ noted also that Claimant did not have a prescription for Voltaren filled despite allegations of knee pain, "had not taken her hypertension medication in about a year nor had she taken her acid reflux medication in about two months." (R. 16). He noted further that in October 2008, Claimant advised Dr. Martin that her shoulder pain was not "bother[ing] her enough" to require an injection. (R. 255). The ALJ acknowledged, however, a follow-up visit with Dr. Martin in January 2009 during which Claimant alleged that her shoulder "continue[s] to bother her." (R. 14, 257). The ALJ noted Claimant's daily activities also suggest that her pain was not disabling, citing in particular Claimant's ability to perform certain household chores for up to two hours without requiring pain medication. (R. 15).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion (R. 216), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 28). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II. The ALJ properly concluded that Claimant could return to past relevant work.

Claimant contends the ALJ erred in finding Claimant was capable of past relevant work. Pl.'s Mem. at 7. Upon review of Claimant's argument, it is evident Claimant contends further that that the ALJ improperly assessed Claimant's RFC. *See id.* (alleging "the hearing decision does not fully explore the facts supporting a conclusion that [Claimant] has the RFC to perform . . . light work").

### (a) The ALJ properly assessed Claimant's RFC.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite

11

impairments and related symptoms. S.S.R. 96-8p, 1996 SSR LEXIS 5, at *1, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and her medical history. As discussed above, the ALJ's opinion provides an adequate and accurate review of Claimant's medical records and opinions by treating, examining and non-examining physicians. While noting the observation that Claimant can stand about 30 to 45 minutes by Dr. Kumar, the state agency examining physician, the ALJ noted also that Dr. McAvoy, the orthopeadist who treated Claimant for knee pain, reported in January 2004 that Claimant "could return to regular duty work without restrictions" as well as normal activities following arthroscopic surgery on her left knee. (R. 186). Dr. McAvoy reported also that Claimant had a full range of motion despite complaints of knee pain and Dr. Kumar observed that Claimant had no restricted movements of any of her joints and did not require the use of a cane or a walker to ambulate. (R. 182, 211, 213). The ALJ acknowledged the testimony of Dr. Cannon, the ME, that Claimant was capable of "at least" sedentary work. (R. 15, 46). Given the RFC represents *the most* an individual can do despite her limitations or restrictions, 20 C.F.R. § 404.1545(a), 416.945(a), Dr. Cannon's opinion is not inconsistent with the ALJ's determination that

Claimant can perform light work. The ALJ acknowledged also Dr. Cannon's testimony that Claimant could not perform "continuous above the shoulder lifting" if she was performing sedentary work. (R. 15, 46). The ALJ, however, noted that Dr. Martin, the orthopaedist who treated Claimant for shoulder impingement, right wrist and hand pain, reported Claimant as having "a good range of motion of both shoulder, elbow, wrist and hands." (R. 14, 255). Dr. Martin reported further that while Claimant continued to experience "some mild tenderness" in her shoulder, her shoulder impingement had improved with Relafen and her wrist and hand pain had also improved. (R. 15-16, 254-55, 257).

Claimant references her testimony as to her limited ability to stand and walk as a result of degenerative disc disease in both knees, concluding she is not capable of light work. Pl.'s Mem. at 7. Claimant argues further that she cannot perform light work as her range of motion is limited as a result of her shoulder impingement syndrome as well hand and knee pain. *Id.* However, as discussed above, the ALJ did not find Claimant's testimony entirely credible based on Claimant's medical treatment, medication regimen and daily activities. (R. 15-16). The ALJ's assessment did include statements by Claimant found to be credible. (R. 16); *see Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (noting that the ALJ need not accept a claimant's subjective evidence to the extent it is inconsistent with the available evidence). While a state agency non-examining consultant found Claimant had the RFC to perform medium work, the ALJ accorded the opinion "little weight" based on Claimant's hearing testimony. (R. 16, 215-22).

The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

**(b) The ALJ properly concluded Claimant could perform her past relevant work.**

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of claimant's past relevant work ("PRW") and then determines whether claimant's impairment(s) prevent claimant from performing such work. 20 C.F.R. §§ 404.1520(e)(f); 416.920(e)(f). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 SSR LEXIS 27, at *6, 1982 WL 31386, at *3. In determining a claimant's ability to do PRW, the ALJ must consider the following:

1. the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
2. medical evidence establishing how the impairment[s] limit[] [his or her] ability to meet the physical demands and mental requirements of such work; and
3. in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found "not disabled" if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207; *see also* S.S.R. 82-61, 1982 SSR LEXIS 31, 1982 WL 31387.

The ALJ found Claimant was capable of performing her PRW as a small product assembler and as a cleaner/housekeeper. (R. 16). The ALJ made the necessary findings in conformity with the guidelines listed above. First, the ALJ considered Claimant's allegations regarding her pain and other symptoms, in addition to Claimant's contention that she is unable to perform her past work due to standing limitations. (R. 12). However, as explained above, the ALJ concluded such statements were not entirely credible. (R. 15). Second, as summarized above, the ALJ reviewed the medical evidence regarding the impact of Claimant's impairments on her ability to meet the physical and

mental demands of light work. Based on the medical records, the ALJ noted Claimant's impairments do not prevent her from standing, walking or sitting for 6 hours in an eight-hour day nor from frequently lifting or carrying 10 pounds. (R. 21). Finally, the ALJ relied on vocational expert testimony as supplementary information. At the administrative hearing, the VE testified as to Claimant's work history, noting both the small products assembler and cleaner positions were classified as unskilled light work. (R.16, 46). Claimant's counsel did not cross-examine the VE.[2]

Based on Claimant's RFC, the ALJ properly concluded Claimant is capable of performing her previous work as a small products assembler and a cleaner. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of

---

[2] Claimant faults the ALJ for "not exploring" with the VE the "obvious limitations in [Claimant's] ability to walk, stand, stoop, reach or do overhead activities. Pl.'s Mem. at 8. If the ALJ, however, does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he does not include those impairments in his questioning of the VE. *Bryant v. Astrue*, No. 7:06-CV-00151-FL, 2008 WL 2037421, at *11 (E.D.N.C. May 12, 2008) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005)). As discussed above, the ALJ did not find Claimant's testimony entirely credible.

15

plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, 30th the day of September, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge